IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHELBY HOLLOMON, <br><br> Plaintiff, <br><br> v. <br><br> CHICAGO PATROLMEN'S FEDERAL CREDIT UNION, <br><br> Defendant. | No. 20-cv-00056 <br> Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Shelby Hollomon (Hollomon) brought suit against Chicago Patrolmen's Federal Credit Union (CPFCU),[1] alleging it violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, *et seq.*, by reporting tradelines with erroneous scheduled monthly payment amounts on Hollomon's Equifax Information Services, LLC (Equifax) and non-party Trans Union credit disclosures. R. 1, Compl. Specifically, Hollomon asserts that CPFCU violated 15 U.S.C. § 1681s-2(b) by both negligently (Count III) and willfully (Count IV) failing to review all relevant information in conducting its reinvestigation of Hollomon's disputed tradelines, creating a misleading impression on Hollomon's consumer credit file by reporting the errant

---

[1]Hollomon initially brought suit against a credit reporting agency (CRA), Equifax, and two furnishers, CPFCU and Credito Real USA Finance, LLC f/k/a AFS Acceptance LLC (Credito Real), for the alleged violations. *See* Compl. The Court has dismissed defendants Equifax and Credito Real without prejudice. *See* R. 13, 3/6/2020 Minute Entry; R. 32, 7/28/2020 Minute Entry. With these dismissals, CPFCU is the only remaining defendant to Hollomon's suit, and as such, this Opinion focuses on allegations pertinent to CPFCU.

tradelines, and failing to direct Equifax and Trans Union to correct the inaccuracies and report the tradelines with a $0.00 monthly payment amount. Defendant CPFCU moves to dismiss Counts III and IV of the Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). R. 22, Mot. Dismiss. For the reasons that follow, CPFCU's motion to dismiss is denied.

**Background**

On or about August 7, 2018, Hollomon obtained his Equifax and Trans Union credit reports and discovered that CPFCU was reporting tradelines with erroneous scheduled monthly payment amounts. Compl. ¶ 11.[2] Hollomon alleges that CPFCU inaccurately reported a $25.00 monthly payment amount on his Equifax credit report and a $137.00 monthly payment amount on his Trans Union credit report. *Id*. ¶ 9. Hollomon maintains that these reported monthly payment amounts were erroneous, because Hollomon no longer had an obligation to make monthly payments to CPFCU. *Id*. CPFCU had already closed his accounts and accelerated the balances due. *Id*. Hollomon contends that per credit reporting industry standard, CPFCU cannot report monthly payments on closed accounts, and payments should have been reported as $0.00. *Id*. ¶ 10.

On or about October 10, 2018, in response to these inaccuracies, Hollomon submitted a letter to Trans Union disputing CPFCU's errantly reported tradeline. Compl. ¶ 12. On or about December 31, 2018, Hollomon then submitted a letter to Equifax similarly disputing CPFCU's errantly reported tradeline. *Id*. ¶ 13. Hollomon

---

[2]The Court accepts as true all of the well pled facts in Holloman's Complaint and draws all reasonable inferences in Hollomon's favor. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

alleges that in his dispute letters, he explained that the accounts with CPFCU were closed and charged off,[3] and he asked Equifax and Trans Union to report the tradelines with the correct monthly payment amount of $0.00. *Id.* ¶ 14. Hollomon alleges that Equifax and Trans Union forwarded his consumer dispute letters to CPFCU and that CPFCU received his letters. *Id.* at ¶¶ 15, 16.

Without having received investigation results from either Equifax or Trans Union, Hollomon obtained his Equifax and Trans Union credit reports on February 8, 2019. Compl. ¶ 18. The credit disclosures confirmed that CPFCU, Equifax, and Trans Union had either failed or refused to report the CPFCU tradelines with the correct monthly payment amount of $0.00. *Id.*

Hollomon subsequently filed suit against CPFCU, asserting that CPFCU's negligent and willful failures to investigate and correct the errors in his Equifax and Trans Union credit reports violated Section 1681s-2(b) of the FCRA and caused him to suffer "credit and emotional damages." Compl. ¶ 19. CPFCU has moved to dismiss Counts III and IV of the Complaint under Fed. R. Civ. P. 12(b)(6).

## Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.

---

[3] Though Hollomon mentions that his Trans Union account was "charged off" several times in the Complaint, he does not define the term. The Court defines the term as follows: to "charge off" an account means "to treat [an account] as a loss or expense because payment is unlikely; to treat as bad debt." *See* Black's Law Dictionary (11th ed. 2019).

2

CIV. P. 8(a)(2). To survive a motion to dismiss, a complaint need only contain factual allegations, accepted as true, sufficient "to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## Analysis

In addition to imposing consumer protection obligations on CRAs (like here, Equifax), the FCRA also imposes obligations on entities that furnish information to the CRAs (like here, CPFCU). *See Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 433 (7th Cir. 2009). "[A]n entity cannot furnish information if it knows or has reasonable cause to know the information is inaccurate." *Id*. at 433–34 (citing 15 U.S.C. § 1681s–2(a)(1)(A)). The FCRA "mandates that [a]fter receiving notice . . . of a dispute with regard to the completeness or accuracy of any information provided to a consumer reporting agency, the furnisher must conduct an investigation regarding the disputed information and report the results to the agency." *Id*. at 434 (internal quotations omitted). Ultimately, "[i]f the investigation concludes that a disputed item is inaccurate or cannot be verified, the furnisher must promptly modify, delete, or block the reporting of that information." *Id*. (citing 15 U.S.C. § 1681s–2(b)(1)(E)).

3

The FCRA provides a private cause of action against furnishers who willfully or negligently violate Section 1681s-2(b), i.e., who after receiving notice of a dispute about the accuracy of a consumer's information, fail to adequately investigate and correct any inaccurate information. *See* 15 U.S.C. § 1681n; *see also* 15 U.S.C. § 1681o; *Zahran v. Bank of Am.*, 2016 WL 826402, at *3 (N.D. Ill. Mar. 3, 2016). "To state a claim for a violation of Section 1681s-2(b), a plaintiff must plausibly allege facts that, if proven, would show that (1) he notified a CRA that it was reporting inaccurate information; (2) the CRA relayed the plaintiff's claim to the information furnisher; and (3) the furnisher failed to investigate and correct the allegedly inaccurate information in question." *Jackson v. Experian Info. Sols., Inc.*, 2016 WL 2910027, at *3 (N.D. Ill. May 19, 2016) (citing *Westra v. Credit Control*, 409 F.3d 825, 827 (7th Cir. 2005)). For purposes of a FCRA claim, "inaccurate" information includes both factually incorrect information and information that creates a misleading impression "to such an extent that it can be expected to have an adverse effect on the consumer." *ShamesYeakel v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1004 (N.D. Ill. 2009) (internal citations omitted).

In its motion to dismiss, CPFCU raises two bases for dismissal. *See* R. 22-1, Mot. Dismiss Memo. at 7–11. First, CPFCU argues that Count III (the negligent FCRA claim) and Count IV (the willful FCRA claim) should both be dismissed, because Hollomon fails to plead the first element of any FCRA claim—that he notified the CRAs that they were reporting inaccurate information. *Id*. at 7–10. Second, CPFCU argues that Count IV should alternatively be dismissed, because Hollomon

4

fails to plead any facts (beyond the mere inclusion of the word, "willful") that support a willful FCRA claim rather than a negligent FCRA claim. The Court takes each basis for dismissal in turn.

### I. Pleading Inaccuracies (Counts III and IV)

As noted above, to state a Section 1681s-2(b) claim, a plaintiff must first plausibly allege that he notified a CRA that it was reporting inaccurate information. *Jackson*, 2016 WL 2910027, at \*3. CPFCU argues that Hollomon fails to meet this first element, because his dispute letters (which, as CPFCU points out, were not attached to the Complaint) did not complain of "inaccuracies" in his credit reports. Mot. Dismiss Memo. at 2–3. Rather, CPFCU proceeds to attach six "dispute letters" to its motion and argues that Hollomon's letters only complained that *he did not have* an account with CPFCU. *Id.* at 7–9; *see e.g.*, R. 22-1, CPFCU Exh. A ("Not mine, I never had an account with company."); R. 22-2, CPFCU Exh. B ("This is not my account."). CPFCU maintains that the supposed inaccuracies alleged in the Complaint (that erroneous monthly payments of $25.00 and $137.00 were reported on his credit reports) are "nowhere to be found in his actual dispute letters." Mot. Dismiss Memo. at 9. CPFCU contends that because Hollomon cannot show that he notified the CRAs of inaccuracies, he has failed to plausibly allege the first element of a FCRA claim.[4]

---

[4] CPFCU also argues that Hollomon cannot credibly claim that he did not have an account with CPFCU, because he acknowledged his account with and obligations to CPFCU in two separate bankruptcy filings. *Id.* at 10. CPFCU attaches multiple exhibits of Hollomon's bankruptcy filings to support this argument. R. 22-7–9, CPFCU Exhs. F–H. The Court does not consider this argument for two reasons. First, and as discussed below, the Court does not agree with CPFCU's premise that Hollomon only complained about his lack of

5

Hollomon, in response, argues that he *did* allege that he notified the CRAs about the inaccurate information being reported, and CPFCU attached the "wrong" dispute letters to its motion to dismiss. R. 28, Resp. at 5–6. Indeed, Hollomon contends that CPFCU's Exhibits A–E are "irrelevant to [his] claims in this lawsuit." *Id*. at 6. Hollomon explains (and as clearly alleged in the Complaint) that the pertinent dispute letters were sent on October 10, 2018 and December 31, 2018. *Id*. at 5–6; *see also* Compl. at ¶¶ 12–13. Hollomon proceeds to attach the October 10, 2018 and December 31, 2018 dispute letters to his Response. R. 28-1, Hollomon Trans Union Dispute Letter; R. 28-2, Hollomon Equifax Dispute Letter. The October 10, 2018 letter to Trans Union reads, in pertinent part,

> "**Chicago Patrolmen's Credit, Open Date: 12/2014.** You are reporting this tradeline with a monthly payment of $137.00. That is false as this account has been charged off. Please remove the monthly payment of $137.00 and replace it with $0."

Hollomon Trans Union Dispute Letter at 1 (emphasis in original). Similarly, the December 31, 2018 letter to Equifax reads, in pertinent part,

> "Chicago Patrolmen's Credit, Open Date: 12/2014. You are reporting this tradeline on my credit report with a monthly payment of $25.00. This is false as this account is closed, has a $0 balance and therefore, no

---

account with CPFCU. Second, even if the Court were to entertain that premise, the Court does not evaluate the credibility of Hollomon's allegations in resolving a motion to dismiss. *Fuery v. City of Chicago*, 2009 WL 1270201, at *2, n.1 (N.D. Ill. May 6, 2009) ("It is well understood that in resolving a motion to dismiss the Court must accept the factual allegations of a complaint as true and draw reasonable inferences in favor of the Plaintiffs . . . [Defendants] would have the Court disregard these rules and instead ask the Court interpret the allegations in *their* favor and also to assess the Plaintiffs' credibility. Defendants will have the opportunity to present their version of events at a later point in the litigation.") (emphasis in original) (internal citation omitted). Relatedly, the Court does not consider CPFCU's bankruptcy filing exhibits at the pleadings stage, because the Complaint does not incorporate these filings, and they are not central to Hollomon's claims. *Allstate Life Ins. Co. v. Peoplesoft, Inc.*, 2004 WL 1375383, at *2 (N.D. Ill. May 26, 2004) (collecting cases).

monthly payment is owed. Please remove the monthly payment of $25.00 and replace it with $0."

Hollomon Equifax Dispute Letter at 1.

Importantly, CPFCU does not raise an objection to the Court considering these Trans Union and Equifax dispute letters that Hollomon attached for the first time to his Response. *See generally* R. 29, Reply. With no objection and also because the Court can consider materials attached to a response brief, so long as those materials are consistent with the pleadings (which the Court finds to be the case here; *see* Compl. at ¶¶ 12–13), the Court considers the Trans Union and Equifax dispute letters in determining whether Hollomon has alleged the first element of a FCRA claim. *See Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017) (noting that "[m]aterials or elaborations in appellants' brief opposing dismissal may be considered, so long as those materials or elaborations are consistent with the pleadings") (internal citation omitted); *Jones v. Hunt*, 2020 WL 814912, at *2 (N.D. Ill. Feb. 19, 2020) ("A plaintiff need not put all of the essential facts in the complaint; he may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint.") (internal citation omitted); *see also York v. Equifax Info. Servs., LLC*, No. 19-cv-02503 (N.D. Ill. Feb. 10, 2020) (considering additional factual allegations in the plaintiff's response brief, including a newly attached credit report and allegations regarding her account with the furnisher being "charged off," in determining whether she had alleged a notification of inaccuracies, because the credit report and charge off information were referred to in her complaint and central to her claims).

In then reviewing the Trans Union and Equifax dispute letters, the Court finds that Hollomon has sufficiently alleged that he notified the CRAs of inaccuracies in his credit reports. Not only does his Complaint allege on its face that he notified the CRAs of inaccuracies (Compl. at ¶¶ 11–14), but both dispute letters clearly note that CPFCU's reporting was "false"—in Trans Union's case, because the account was "charged off" and in Equifax's case, because the account was "closed." *See* Hollomon Trans Union Dispute Letter at 1; Hollomon Equifax Dispute Letter at 1. Contrary to CPFCU's contention in its motion to dismiss, the inaccuracies alleged in the Complaint (that erroneous monthly payments of $25.00 and $137.00 were reported on his credit reports) are in fact "[somewhere] to be found in his actual dispute letters." Mot. Dismiss Memo. at 9.

Notably, though CPFCU does not object to Hollomon's attaching of dispute letters to his Response, CPFCU does generally object to Hollomon's contention that claiming an account has been "charged off" (as Hollomon claimed in his letter to Trans Union) is the same as claiming the reported amount owed is "inaccurate." Reply at 5. While the Court notes that the Trans Union letter does not just state that the reported amount owed was "charged off" but also unambiguously states that the amount owed was "false," the Court briefly addresses CPFCU's charged off argument for purposes of completeness. The Court notes that *York v. Equifax Info. Servs.*, relied on in Hollomon's Response, is on point here. *York*, No. 19-cv-02503 at 1. In *York*, a nearly identical FCRA suit, Judge Alonso found that the plaintiff had alleged (i) that by charging off and closing the account, the furnisher had accelerated the debt and

8

extinguished the plaintiff's monthly payment obligation, and (ii) that she accordingly notified Equifax that her account should reflect that she owed $0.00. *Id.* at 7. Taken together, Judge Alonso found that the plaintiff had notified the CRA of inaccuracies in her credit report and pled just enough to state the first element of a FCRA claim. *Id*. So too here. CPFCU's attempt to distinguish *York* in its Reply is unpersuasive. Reply at 4. CPFCU contends that, unlike *York*, Hollomon's Complaint is entirely based on CPFCU's "failure to conform to industry guidelines." CPFCU mischaracterizes Hollomon's allegations. Drawing all reasonable inferences from Hollomon's allegations, the Court finds that Hollomon is not alleging that his credit report is misleading because it does not follow industry standards; rather, like the *York* plaintiff, he is alleging that his credit report is misleading, because it inaccurately reports that he owes debts that have been closed or extinguished.

All in all, considering (i) allegations in the Complaint regarding notification of inaccuracies and (ii) Hollomon's dispute letters claiming that CPFCU's reporting was "false" due the accounts being "closed" and "charged off," the Court finds that Hollomon sufficiently pleads that he notified both Trans Union and Equifax of inaccuracies in his credit reports. The Court accordingly finds that Hollomon has pled the first element of a FCRA claim for purposes of a motion to dismiss, and CPFCU's motion to dismiss Counts III and IV is denied on that basis.

## II. Willful Versus Negligent Allegations (Count IV)

CPFCU also argues that Count IV should alternatively be dismissed, because Hollomon fails to plead any facts (beyond the mere inclusion of the word, "willful")

9

that support a willful FCRA claim rather than a negligent FCRA claim. Mot. Dismiss Memo. at 10. CPFCU contends that Hollomon must plead facts which demonstrate that its conduct was intentional or reckless, and he has not done so. *Id.* (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (noting that a company willfully violates the FCRA when it intentionally or recklessly disregards the FCRA's requirements and to be reckless, the company's interpretation must be "objectively unreasonable")). CPFCU further contends that "[a] side by side comparison of Counts III and IV demonstrates that Hollomon has simply lifted the allegations from Count III and repeated them, almost verbatim under Count IV," with the sole modification of switching out "negligent" for "willful." *Id.* at 10–11. CPFCU insists that this "re-labeling" should not survive a motion to dismiss under Fed. R. Civ. P. 8. *Id.* at 11.

Hollomon raises a few arguments in response, the most persuasive being that he cannot plead further facts regarding CPFCU's willful violation of the FCRA without engaging in discovery. Resp. at 8. Hollomon cites to an out-of-District case, *Ellis v. Equifax Info. Servs., LLC*, 2019 WL 3503538, at *1 (N.D. Ga. June 6, 2019), to support that contention. Resp. at 8. In *Ellis*, also involving a two-count negligent and willful FCRA complaint, the court found that

> "[i]t is not improper for a plaintiff to rely on the same basic facts to allege alternative claims for willful or negligent violations of the same statute. The degree of knowledge involved in the alleged violations is a matter uniquely within the defendant's possession, and the plaintiff may not be capable of any more definite factual assertion prior to discovery. That is not to say, however, that the Complaint in this case lacks any factual allegations to support a claim of willfulness. Here, Plaintiff alleges, albeit in a generalized fashion, that there was a fairly obvious error on her credit report, and that despite being made aware of the error, Trans Union did not fix it. These facts go beyond a mere recitation of the

10

>elements of the alleged violation and are sufficient to inform Trans Union of the basis for Plaintiff's claims."

CPFCU attempts to factually distinguish *Ellis* in its Reply in suggesting that the *Ellis* plaintiff at least pled a "fairly obvious error," while Hollomon has failed to plead "**any** basic facts" to support a willful claim. Reply at 6 (emphasis in original). The Court finds this attempt at distinguishing unavailing. In fact, the *Ellis* plaintiff pled the exact same facts as Hollomon alleges here. *Ellis*, 2019 WL 3503538, at *1. The *Ellis* plaintiff pled that (i) she noticed the incorrect scheduled monthly payment amounts on her Equifax and Trans Union credit reports; (ii) she submitted dispute letters that explained that the furnisher accounts were closed and "she had no obligation to make monthly payments"; and (iii) she asked Equifax and Trans Union to report the accounts with a monthly payment amounts of $0.00. *Id*. The court in *Ellis* found that based on these (albeit generalized) allegations, the plaintiff had alleged that there was a "fairly obvious error on her credit report, and that despite being made aware of the error, Trans Union did not fix it." *Id*. Hollomon pleads the same facts in his Complaint. *See* Compl. 11–14. And while the Court notes that *Ellis* is not controlling, the Court finds that its reasoning is persuasive and instructive. Based on the facts alleged, the Court finds that Hollomon has sufficiently pled that there was a fairly obvious error on his credit report, and that despite CPFCU being made aware of the error, the error was not fixed. The Court makes no comment on the future of Count IV, but at this early juncture, the Court finds that Hollomon has pled just enough to state a willful claim. As such, CPFCU's motion to dismiss as to Count IV is denied.

**Conclusion**

For the foregoing reasons, CPFCU's motion to dismiss [22] is denied. CPFCU has until April 9, 2021 to answer the Complaint. The parties are instructed to submit a joint status report on or before April 23, 2021.

Franklin U. Valderrama
United States District Judge

Dated: March 12, 2021